UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JILL MERRICK, for herself, as a private attorney general, and/or on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIUM BRANDS OPCO LLC,<br><br>Defendant. | CASE NO. 2:25-cv-02291-JNW<br><br>ORDER REMANDING CASE |
| GAYLA SUE BREACH, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIUM BRANDS OPCO LLC,<br><br>Defendant. | |

## 1. INTRODUCTION

This matter comes before the Court on the parties' responses to the Court's order for supplemental briefing on whether Plaintiffs Jill Merrick and Gayla Sue

Breach have Article III standing. Dkt. Nos. 47, 49. For the reasons stated below, the Court finds it lacks subject matter jurisdiction, DENIES Defendant's request for a stay, and REMANDS the consolidated cases to King County Superior Court.

## 2. BACKGROUND

Plaintiffs filed separate putative class actions in King County Superior Court against Defendant Premium Brands Opco LLC, the company that owns and operates the LOFT brand. Dkt. No. 19 ¶¶ 1–2. LOFT removed both actions to this Court, asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). Dkt. No. 1 at 2. Plaintiffs filed a consolidated amended class action complaint ("Amended Complaint"), alleging LOFT violated Washington's Commercial Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA") by sending consumers marketing emails with false or misleading subject lines. Dkt. No. 20 ¶ 45.

On August 28, 2026, the Court ordered the parties to file supplemental briefing on whether Plaintiffs have Article III standing; and if so, whether the Court should stay this case pending the Ninth Circuit appeals in *Montes v. Penney OpCo., LLC*, No. 25-8045 and *Montes v. SPARC Grp., LLC*, No. 23-35496. Dkt. No. 44 at 3. Because Article III standing is a threshold issue, the Court starts there. *Hutton v. Papa John's USA Inc.*, No. C25-1922-KKE, 2026 WL 2210133, at *1 (W.D. Wash. July 31, 2026).

## 3. DISCUSSION

### 3.1 Legal standard.

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). If a plaintiff lacks Article III standing, the Court does not have subject matter jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). The standing inquiry begins with a simple principle: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc.* (*Spokeo II*), 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins* (*Spokeo I*), 578 U.S. 330, 341 (2016) as revised (May 24, 2016)). To establish a concrete injury, "the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Id.* (quoting *Spokeo I*, 578 U.S. at 340). Put simply, "an injury in law is not an injury in fact."

*TransUnion*, 594 U.S. at 427. The key question is whether the plaintiff has identified "a close historical or common-law analogue" for the asserted injury. *Id.* at 424. Physical and monetary harms readily qualify, and so can some intangible harms, such as intrusion upon seclusion. *Id.* at 425.

"The burden of establishing removal jurisdiction, even in [CAFA] cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011). So LOFT, as the party invoking federal jurisdiction, must establish "the facts necessary to support standing with the manner and degree of evidence required at the successive stages of the litigation." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). At the pleading stage, the Court looks to the allegations in the complaint. *See id.* at 1099 & n.2. If the Court determines, after removal, that it lacks subject matter jurisdiction, it must remand the case to state court. 28 U.S.C. § 1447(c). Remand, not dismissal, is the proper remedy. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

### 3.2 LOFT has not shown that Plaintiffs have suffered a concrete injury.

Plaintiffs take no position on Article III standing. Dkt. No. 49 at 2. In a strange turn of events, LOFT goes from arguing in its motion to dismiss that Plaintiffs were unharmed by LOFT's emails, as neither Plaintiff noticed or opened them, to arguing here that for Article III purposes "the injury *is* receiving an e-mail containing false or misleading information." Dkt. No 47 at 3 (emphasis in original). It points to two allegations: that an injury occurs "any time a commercial email is transmitted that contains false or misleading information in the subject line," and

that LOFT's emails "clog up inboxes and waste limited data space." *Id.* (quoting Dkt. No. 20 ¶¶ 39, 55). LOFT acknowledges that Plaintiffs allege no "actual damages." *Id.* at 4.

LOFT's position runs up against "an ever-growing list of decisions [in this District] finding that the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." *Stutsman v. Sirius XM Radio LLC*, No. 2:25-CV-01113-LK, 2026 WL 2445129, at *4 (W.D. Wash. Aug. 20, 2026) (collecting cases). *See also Hutton*, 2026 WL 2210133, at *2 ("[T]he Court finds that merely alleging a CEMA violation is insufficient to allege a concrete injury to [the plaintiff]."); *Aronson v. 5 Star Apparel LLC*, No. C25-2691JLR, 2026 WL 2332885, at *2 (W.D. Wash. Aug. 4, 2026) ("[E]ven if [the plaintiff] has plausibly alleged that [the defendant] violated CEMA, he cannot pursue his claim in this court because he failed to allege an Article III injury-in-fact."); *Samaduroff v. David Peyser Sportswear Inc*, No. 3:26-CV-05275-TMC, 2026 WL 2675977, at *2 (W.D. Wash. Sept. 11, 2026) ("The fact that Plaintiffs received emails allegedly in violation of CEMA does not itself constitute injury-in-fact under Article III.").

LOFT relies on *Brown v. Old Navy, LLC*, which holds that under CEMA the injury is receiving an email that violates the statute. Dkt. No. 47 at 3 (citing 567 P.3d 38, 42 (Wash. 2025)). That settles what Washington law requires, but it doesn't settle whether Plaintiffs suffered a concrete harm under Article III—a question federal courts must decide for themselves. As LOFT notes, some statutory violations

do inflict concrete harm on their own. Dkt. No. 47 at 3 (citing *Spokeo II*, 867 F.3d at 1112–13). But whether this one does turns on the question *TransUnion* asks: does the harm resemble one that courts have traditionally redressed?

LOFT says it does. It argues Plaintiffs' harm mirrors those in cases involving unwanted marketing materials, including invasion of privacy, intrusion upon seclusion, and nuisance. Dkt. No. 47 at 3–4 (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)). But each of those analogues depends on contact the plaintiff did not want. Plaintiffs do not sue over unsolicited emails; they sue over allegedly false and misleading subject lines. *See Stutsman,* 2026 WL 2445129, at *3 ("CEMA does not prohibit unsolicited emails. Instead, it prohibits emails that misrepresent the sender's identity or contain false or deceptive subject lines."); *Montes v. Catalyst Brands LLC*, No. 2:25-CV-0281-TOR, 2025 WL 3485827, at *3 (E.D. Wash. Dec. 4, 2025) (when a plaintiff does not allege that the emails were unsolicited or unwanted, "[t]here is not an invasion of privacy or any similar injury to constitute a concrete harm.").

Here, Plaintiffs allege they "would like to continue receiving [LOFT's] commercial emails, provided that the subject lines of the emails do not contain false or misleading information." Dkt. No. 20 ¶ 69; *see also id.* ¶ 12 (Merrick began receiving LOFT's emails after making a purchase). That also answers LOFT's inbox-clutter theory. The Amended Complaint alleges that LOFT's repetitive sale emails "clog up inboxes and waste limited data space," but it does not allege that Plaintiffs' own inboxes were burdened or that the emails bothered them. Dkt. No. 20 ¶ 55; *see Samaduroff*, 2026 WL 2675977, at *2 (allegation that emails "clog up

inboxes" insufficient where plaintiffs did not contend the sender "added them to or kept them on its mailing list without their consent"). Nor does the Amended Complaint allege that a subject line misled Plaintiffs, that they relied on one, or that they lost money. *See generally* Dkt. No. 20.

The two decisions LOFT cites that found standing do not change this result. Dkt. No. 47 at 4 (citing *Liss v. Skechers USA, Inc.*, No. 3:25-cv-05861-DGE, 2026 WL 1392327 (W.D. Wash. May 19, 2026); *Devivo v. Sheex Inc.*, No. 3:25-cv-05807-DGE, 2026 WL 1734589 (W.D. Wash. June 16, 2026)). The *Liss* plaintiffs "at no point allege[d] they consented to receive emails," and the court distinguished *Nuri* on that basis. *Liss*, 2026 WL 1392327, at *3. *Devivo* did the same. 2026 WL 1734589, at *2 n.1. Plaintiffs here, by contrast, allege that *they want* LOFT's emails. Dkt. No. 20 ¶¶ 69, 116. And to the extent *Liss* holds that a CEMA violation is itself an injury "in precisely the form the statute was intended to guard against," *Liss*, 2026 WL 1392327, at *3 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982)), the Court respectfully disagrees. As explained above, a legislature's judgment does not by itself make a statutory violation a concrete harm.

In short, Plaintiffs allege a CEMA violation and nothing more. Because LOFT has not shown that the violation caused Plaintiffs a concrete harm, it has not carried its burden to establish Article III standing.

**3.3 Remand is appropriate.**

LOFT argues that the Court should stay this case because, among other reasons, the threshold issue of jurisdiction should be resolved by the Ninth Circuit

before the case proceeds. Dkt. No. 47 at 5. But LOFT asks for a stay only "[s]hould this Court have any doubt about jurisdiction." *Id.* at 2. On these allegations, standing is not an open question, and the Court need not await further rulings from the Ninth Circuit to decide it. Because the Court lacks jurisdiction, remand is the appropriate course. *See* 28 U.S.C. § 1447(c); *Polo*, 833 F.3d at 1196.

## 4. CONCLUSION

Accordingly, the Court ORDERS as follows:

1. This case, and the consolidated case, are REMANDED to King County Superior Court, effective FOURTEEN (14) days from the date of this Order. *See* LCR 3(i).
2. LOFT's motion to dismiss, Dkt. No. 28, is DENIED as moot.
3. The Clerk of Court is directed to CLOSE this case and the consolidated case.

Dated this 8th day of October, 2026.

Jamal N. Whitehead
United States District Judge